Nicholas Jurkowitz (SBN 261283)
njurkowitz@fjlawgroup.com
David D. Wagmeister (SBN 309736)
dwagmeister@fjlawgroup.com
**FENTON JURKOWITZ LAW GROUP, LLP**
1990 S. Bundy Drive, Suite 777
Los Angeles, CA 90025
Tel: (310) 444-5244
Fax: (310) 444-5280

*Attorneys for Plaintiffs:*
*Rami Shaarawy, M.D.; and*
*Rami Moustafa Shaarawy M.D. Medical Corporation*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMI SHAARAWY, M.D., | Case No.: 2:24-cv-09124 |
| and | **COMPLAINT FOR INJUNCTIVE RELIEF** |
| RAMI MOUSTAFA SHAARAWY M.D. MEDICAL CORPORATION, | Count I: No Review At All (*Illinois Council* Exception) |
| Plaintiffs, | Count II: Procedural Due Process (*Mathews v. Eldridge* Waiver) |
| vs. | Count III: Preservation of Rights under Section 705 of the APA |
| XAVIER BECERRA, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, | |
| CHIQUITA BROOKS-LASURE, ADMINISTRATOR OF THE CENTERS FOR MEDICARE & MEDICAID SERVICES, | |
| and | |
| NORIDIAN HEALTHCARE SOLUTIONS, LLC, MEDICARE | |

**COMPLAINT FOR INJUNCTIVE RELIEF**

FENTON
JURKOWITZ
LAW GROUP
LLP

1   ADMINISTRATIVE CONTRACTOR
    FOR CALIFORNIA,
2
3               Defendants.
4
5
6
7

8       NOW INTO COURT, by and through undersigned counsel, comes the

9   Plaintiffs Rami Shaarawy, M.D. (hereinafter "Dr. Shaarawy") and Rami Moustafa

10  Shaarawy M.D. Medical Corporation (hereinafter "Corporation") (collectively,

11  "Plaintiffs"), who apply to this court for injunctive relief as grounds for this

12  Complaint, stating as follows:

13          **I.    Introduction**

14      1.      This is a civil action by Plaintiffs for a Temporary Restraining Order,

15  Preliminary Injunction, and Permanent Injunction to prevent Defendants from putting

16  Plaintiffs out of business and, thus, preventing Plaintiffs from providing essential

17  medical services to thousands of elderly patients in California, based on a

18  misunderstanding by Defendants and/or a misrepresentation by Valley Pacific

19  Hospice, Inc. Defendants have notified Plaintiffs that they will revoke Plaintiffs'

20  Medicare enrollment and billing privileges, as well as place Plaintiffs on the CMS

21  Preclusion List because of Defendants' mistaken belief that there is an affiliation

22  between Plaintiffs and Valley Pacific Hospice, Inc., pursuant to 42 CFR §424.502.

23      2.      The present revocation of Plaintiffs and placement of Plaintiffs on the

24  CMS Preclusion List has arisen from a recent determination by Defendant Noridian

25  Healthcare Solutions, LLC ("Noridian"), a for-profit North Dakota company that has

26  contracted with CMS to act as the fiscal intermediary for the state of California, that

27  "After reviewing the undue risk factors outlined in 42 CFR §424.519(f), as

28  applicable, the duration, degree, extent of Rami Shaarawy's affiliation as being an

individual with managerial control of Valley Pacific Hospice, Inc.'s and their current 855I enrollment in Medicare poses an undue risk of fraud, waste, or abuse to the Medicare Program in violation of 42 CFR §424.535(a)(19)." However, Plaintiffs have no affiliation or managerial control with Valley Pacific Hospice, Inc., as defined by 42 CFR §424.502. As such, Plaintiffs pose no undue risk of fraud, waste, or abuse to the Medicare Program.

3.      Absent intervention by this tribunal, Plaintiffs will suffer irreparable harm and will be forced out of business. In addition, Plaintiffs' many patients will lose their longstanding providers whom they know and trust.

4.      Plaintiffs do not ask this Court to usurp the power of CMS or an Administrative Law Judge ("ALJ") to decide any issue with respect to the dispute on the merits. Plaintiffs are vigorously challenging the dispute on the merits through the administrative reconsideration and appeals process as expeditiously as CMS and an ALJ can accommodate, and Plaintiffs fully anticipate prevailing on all or most of the claims at issue. Plaintiffs simply request that this Court maintain the *status quo* pending completion of the reconsideration and appeal process. Without injunctive relief, Plaintiffs (and their patients) will be irreparably harmed before any meaningful opportunity to obtain the administrative review and judicial review to which they are entitled.

5.      Under law, Medicare is entitled to seek revocation and placement on the preclusion list prior to reconsideration and review by the ALJ. Without injunctive relief, Plaintiffs would be subject to immediate revocation and preclusion in the very near future.

6.      Failure to grant an injunction to prevent immediate revocation and preclusion by Defendants without providing a prompt hearing would violate Plaintiffs' procedural due process rights. If Plaintiffs are deprived of his Medicare enrollment and billing privileges while this dispute is still pending before CMS or the ALJ, Plaintiffs will be irreparably harmed through the destruction of their goodwill

1 and their business. Additionally, many elderly patients will be forced to find
2 alternative providers with whom they have not developed a close physician-patient
3 relationship and who would be deprived of the high-quality medical care that
4 Plaintiffs provide.

5      7.    Plaintiffs have no adequate remedy at law and seek only to preserve the
6 *status quo* pending completion of the reconsideration and appeal process. Plaintiffs
7 seek a Temporary Restraining Order and injunction preventing Defendants from
8 revoking Plaintiffs' Medicare enrollment and billing privileges, and placing Plaintiffs
9 on the CMS Preclusion List until after Plaintiffs have been afforded a hearing and
10 decision on reconsideration from CMS and from an impartial ALJ.

11           **II.    The Parties**

12      8.    Plaintiff Dr. Rami Shaarawy has practiced as a licensed physician in
13 California since 2006. He is board certified in internal medicine, and hospice and
14 palliative medicine. Dr. Shaarawy is a solo practitioner and his practice consists of
15 work as a hospitalist, seeing patients in clinic and in their homes, where he follows
16 patients admitted into the hospital, and as a palliative care physician where he treats
17 many chronically ill patients in skilled nursing facilities.

18      9.    Plaintiff Rami Moustafa Shaarawy M.D. Medical Corporation is a
19 California medical corporation that is solely owned by Dr. Shaarawy.

20      10.    Defendant Xavier Becerra is named only in his official capacity as the
21 Secretary of the United States Department of Health and Human Services ("DHHS"),
22 that agency that administers the Medicare Act, 42 U.S.C. §§ 1395 *et seq*.

23      11.    The Secretary delegates the administration of the Medicare Act to the
24 Centers for Medicare and Medicaid Services ("CMS"). Defendant Chiquita Brooks-
25 LaSure is named only in her official capacity as the Administrator of CMS.

26      12.    CMS contracts with private insurance companies to perform
27 administrative functions for Medicare. Medicare Administrative Contractors
28 ("contractors") process claims, determine whether services are covered by Medicare,

**COMPLAINT FOR INJUNCTIVE RELIEF**

and determine the amount of payment for services furnished, among other duties. As noted, Defendant Noridian Healthcare Solutions, LLC ("Noridian") is a for-profit North Dakota company that has contracted with CMS to act as the contractor and fiscal intermediary for the state of California.

### III.    Jurisdiction and Venue

13.    This action arises under the Social Security Act, 42 U.S.C. §§ 301, *et seq.*, implicating the Medicare Act, 42 U.S.C. §§ 1395 *et seq.*, as well as the Fifth Amendment of the United States Constitution.

14.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1651 (all writs act), 42 U.S.C. § 405, 42 U.S.C. § 1395ii, and under the Court's general equity powers. Plaintiffs are also entitled to the judicial relief they seek pursuant to the Administrative Procedures Act, 5 U.S.C. § 705.

15.    Although Plaintiffs are challenging the decision to revoke Plaintiffs' enrollment and billing privileges as well as placement on the CMS Preclusion List through the administrative process, CMS has no authority to issue an injunction and lack the power to maintain the *status quo* pending a final decision. Accordingly, there is no administrative mechanism through which Plaintiffs can obtain the relief that they seek here, which is solely to defer immediate revocation and placement on the CMS Preclusion List until after Plaintiffs have had the opportunity for reconsideration by CMS and the opportunity for a hearing before a fair and impartial ALJ.

16.    This Court has jurisdiction over this action under 29 U.S.C. § 1331 pursuant to the "no review" exception to the usual requirement of exhaustion of administrative remedies. Exhaustion of administrative remedies under the Medicare Act is not required where exhaustion would mean "no review at all" or "the practical equivalent of total denial of judicial review." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19, (2000) ("*Illinois Council*").

17.     If the court does not issue injunctive relief, Plaintiffs and their patients will have no review at all before irreparable harm takes place and, once the irreparable harm takes place, the theoretically available administrative remedies will be too late and of no value.

18.     Due to the fact that Defendants seek to revoke Plaintiffs' Medicare enrollment and billing privileges and place Plaintiffs on the CMS Preclusion List effective November 1, 2024, and the lengthy delay before CMS can issue a decision on reconsideration and a hearing can be held and decided by an impartial ALJ, Plaintiffs are facing the practical equivalent of a total denial of administrative or judicial review because the revocation of privileges would certainly put Plaintiffs out of business long before any reconsideration decision and ALJ hearing take place.

19.     Plaintiffs are not seeking damages in this action for events that have already occurred. Plaintiffs do not seek this Court's determination of the merits of the underlying dispute. This action is solely about Plaintiffs' survival and ability to continue their operations, and whether the government can engage in revocation that would financially ruin Plaintiffs when the government is unable to provide timely access to an impartial hearing.

20.     Further, this Court has jurisdiction over the action under 28 U.S.C. § 405 pursuant to the "waiver" exception to the usual requirement of exhaustion of administrative remedies. Plaintiffs have submitted requests for reconsideration to CMS, and should Plaintiffs be unsuccessful, will appeal and request a hearing before an ALJ to determine that CMS' revocation of enrollment and billing privileges and placement of Plaintiffs on the CMS Preclusion List is improper. Exhaustion of administrative remedies where a plaintiff's interest in having a particular issue resolved promptly is so great that the requirement is considered waived. Plaintiffs' interest in having the issue of revocation and preclusion resolved promptly is so great that the requirements should be deemed waived.

21.     Plaintiffs' request for an injunction based on the claims asserted herein is "collateral" to Plaintiffs' substantive claims. Plaintiffs do not ask this Court to resolve the merits of the underlying dispute. It merely requests that this Court, based on procedural due process considerations, prevent Defendants from effecting revocation of enrollment and billing privileges and placement on the CMS preclusion list based on preliminary and disputed determinations until after the Plaintiffs have been afforded the opportunity to obtain a decision on reconsideration and a ruling from an unbiased ALJ.

22.     More importantly, Defendants intend to implement revocation and placement on the CMS Preclusion List long before Plaintiffs' first opportunity to obtain a reconsideration decision and present their case to an impartial and unbiased ALJ would harm Plaintiffs irreparably, and the facts of this case give rise to a sufficient threat of irreparable harm so as to justify waiver of the administrative exhaustion requirement. Revocation of Plaintiffs' Medicare enrollment and billing privileges and placement on the CMS Preclusion List would result in immediate irreparable harm to Plaintiffs, through destruction of their business and goodwill, and would also harm the vulnerable communities that Plaintiffs serve. Plaintiffs could not obtain full relief at a post-revocation hearing.

23.     This Court also has jurisdiction under 5 U.S.C. § 705, as a "reviewing court" to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."

24.     Venue is proper in the Central District of California because pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to the claims occurred in this district. Venue is proper under 5 U.S.C. § 703.

## IV.    The Administrative Process

25.     Pursuant to 42 C.F.R. § 424.535(a)(19), CMS may revoke a provider's enrollment upon a determination that the provider has or has had an affiliation that

**COMPLAINT FOR INJUNCTIVE RELIEF**

FENTON
JURKOWITZ
LAW GROUP
LLP

poses an undue risk of fraud, waste, or abuse to the Medicare program. Pursuant to 42 C.F.R. § 422.2, CMS is also authorized to place a provider whose is revoked from Medicare on the CMS Preclusion List. A contractor then issues written notice to the provider of such determination of revocation and inclusion on the preclusion list, typically via a letter.

26.     A provider who is dissatisfied with the initial determination by CMS may request reconsideration of the decision pursuant to 42 C.F.R. § 498.22.

27.     After a Reconsideration Decision is issued, a provider who still disputes the result has the right to request an ALJ hearing before the Departmental Appeals Board, Civil Remedies Division within 60 days from the date of the reconsideration decision, pursuant to 42 C.F.R. § 498.5.

28.     After an ALJ issues a decision, a provider that is dissatisfied with the ALJ's decision may file a written request for review by the Departmental Appeals Board within 60 days from receipt of the administrative process.

## V.     The Present Revocation Dispute

29.     This action concerns a dispute as to the legality of CMS' revocation of Plaintiffs' enrollment in the Medicare program and billing privileges, as well as placement of Plaintiffs on the CMS Preclusion List.

30.     In or around May 2023, Dr. Shaarawy agreed to serve as a Medical Director Designee for Valley Pacific Hospice, Inc.

31.     A Medical Director Designee is not the primary medical director, and is not called upon to make any clinical decisions or have day-to-day control of the hospice business.

32.     Dr. Shaarawy was never responsible for the submission to the hospice of documentation of services provided, so he did not do so. Dr. Shaarawy was never responsible for performing face-to-face encounters with patients, so he never did so.

33.     As Medical Director Designee, Dr. Shaarawy was not supposed to be anything more than a backup medical director whom Valley Pacific Hospice, Inc. could call to answer questions if the Medical Director was not available.

34.     To date, Dr. Shaarawy has never been requested to perform, nor has he performed any task that would comprise the role of a Medical Director at Valley Pacific Hospice, Inc.

35.     From time to time, Valley Pacific Hospice, Inc. called Dr. Shaarawy on the telephone to ask for his medical analysis, and these occasional clinical consultations were the extent of Dr. Shaarawy's role as Medical Director Designee.

36.     Apart from his initial contract with Valley Pacific Hospice, Inc., Dr. Shaarawy did not sign, nor instruct anybody to sign on his behalf, any documents for Valley Pacific Hospice, Inc.

37.     Dr. Shaarawy's relationship with Valley Pacific Hospice, Inc. is merely a limited clinical consultation relationship. Dr. Shaarawy has never been an owner, corporate officer, or director of Valley Pacific Hospice, Inc. Dr. Shaarawy has no oversight of Valley Pacific Hospice, Inc., nor does he exercise any operational or managerial control over Valley Pacific Hospice, Inc.

38.     The clinical consultation services that Dr. Shaarawy provides for Valley Pacific Hospice, Inc. are limited and not regular or on an ongoing basis. Dr. Shaarawy provides them as needed when the situation arises. Dr. Shaarawy estimates that within the past 12 months he has provided approximately 36 hours of services for Valley Pacific Hospice, Inc.

39.     Dr. Shaarawy has not had any involvement whatsoever with Valley Pacific Hospice, Inc.'s medical billing.

40.     On October 2, 2024, both Dr. Shaarawy and the Corporation received a letter from Noridian stating that CMS would revoke Medicare enrollment and Medicare billing privileges, pursuant to 42 CFR §424.519, and add them to the CMS Preclusion List, pursuant to 42 CFR §§422.2 and 422.222.

**COMPLAINT FOR INJUNCTIVE RELIEF**

FENTON
JURKOWITZ
LAW GROUP
LLP

41.     Both letters from Noridian stated the reason for CMS' decision: "After reviewing the undue risk factors outlined in 42 CFR §424.519(f), as applicable, the duration, degree, extent of Rami Shaarawy's affiliation as being an individual with managerial control of Valley Pacific Hospice, Inc.'s and their current 855I enrollment in Medicare poses an undue risk of fraud, waste, or abuse to the Medicare Program in violation of 42 CFR §424.535(a)(19)."

42.     The relevant Code of Federal Regulations section lists the undue risk factors for fraud waste or abuse as follows: "(1) The duration of the affiliation. (2) Whether the affiliation still exists, and if not, how long ago it ended. (3) The degree and extent of the affiliation. (4) If applicable, the reason for the termination of the affiliation. (5) Regarding the affiliated provider's or supplier's disclosable event under paragraph (b) of this section: (i) The type of disclosable event. (ii) When the disclosable event occurred or was imposed. (iii) Whether the affiliation existed when the disclosable event occurred or was imposed. (iv) If the disclosable event is an uncollected debt: (A) The amount of the debt. (B) Whether the affiliated provider or supplier is repaying the debt. (C) To whom the debt is owed. (v) If a denial, revocation, termination, exclusion, or payment suspension is involved, the reason for the disclosable event. (6) Any other evidence that CMS deems relevant to its determination" 42 CFR §424.519(f).

43.     The regulations define affiliation as "(1) A 5 percent or greater direct or indirect ownership interest that an individual or entity has in another organization. (2) A general or limited partnership interest (regardless of the percentage) that an individual or entity has in another organization. (3) An interest in which an individual or entity exercises operational or managerial control over, or directly or indirectly conducts, the day-to-day operations of another organization (including, for purposes of this paragraph (3), sole proprietorships), either under contract or through some other arrangement, regardless of whether or not the managing individual or entity is a W-2 employee of the organization. (4) An interest in which an individual is acting as

1    an officer or director of a corporation. (5) Any reassignment relationship under §

2    424.80. 42 CFR §424.502.

3        44.    As set forth in such provisions of the Code of Federal Regulations, Dr.

4    Shaarawy does not have an affiliation with Valley Pacific Hospice, Inc. that would

5    authorize CMS to revoke Dr. Shaarawy's Medicare enrollment and billing privileges

6    and to add him to the CMS Preclusion List. Dr. Shaarawy's relationship with Valley

7    Pacific Hospice, Inc. is merely as a part-time consultant, without any day-to-day

8    responsibility. Dr. Shaarawy does not have a 5 percent or greater ownership interest

9    in Valley Pacific Hospice, Inc. Dr. Shaarawy does not have a partnership interest in

10   Valley Pacific Hospice, Inc. Dr. Shaarawy does not exercise operational or

11   managerial control over, or conduct day to day operations of Valley Pacific Hospice,

12   Inc. He is not involved in the day-to day operations of Valley Pacific Hospice, Inc.,

13   but he consults on patient clinical issues on a case-by-case basis and does not do

14   patient visits or billing on behalf of Valley Pacific Hospice, Inc. Dr. Shaarawy is not

15   an officer or director of Valley Pacific Hospice, Inc. There is no reassignment

16   relationship between Dr. Shaarawy and Valley Pacific Hospice, Inc. As such, there is

17   no affiliation between Dr. Shaarawy and Valley Pacific Hospice, Inc. that could pose

18   an undue risk of fraud, waste, or abuse to the Medicare Program.

19       45.    Furthermore, because there is no affiliation between Dr. Shaarawy and

20   Valley Pacific Hospice, Inc., as defined by the Code of Federal Regulations, there is

21   no duration of the affiliation, an affiliation has never existed, there is no degree or

22   extent to any affiliation, and there was no disclosable event pertaining to Dr.

23   Shaarawy. Therefore, the conditions required to revoke Dr. Shaarawy's Medicare

24   enrollment and add him to the CMS Preclusion List because of an undue risk of

25   fraud, waste, or abuse to the Medicare Program are not present.

26       46.    Because there is no affiliation between Dr. Shaarawy and Valley Pacific

27   Hospice, Inc. and therefore no undue risk of fraud, waste, or abuse to the Medicare

28   Program, a revocation by CMS is unwarranted.

47.     Plaintiffs are currently in the process of pursuing reconsideration requests with CMS.

### VI.    Irreparable Harm

51.     Because Dr. Shaarawy's specialties of internal medicine and palliative and hospice medicine, approximately 85 % of his patients are Medicare patients. An estimated 1000 patients are in Dr. Shaarawy's care between his office practice, hospital-based practice, and skilled nursing and hospice-practice.

52.     If Dr. Shaarawy's Medicare billing privileges are revoked, Dr. Shaarawy's patients and their families will be drastically and significantly impacted in a negative way. Requiring Dr. Shaarawy's patients to obtain a new physician will disrupt the continuity of care they are receiving and will likely lead to negative clinical outcomes for his patients.

53.     Dr. Shaarawy is also responsible for prescribing medications for all of his patients. They rely upon Dr. Shaarawy's prescriptions to receive their life-saving and palliative care medications, which prevent them from suffering undue pain in their late-stage terminal illness. If terminated as a Medicare provider, any prescription Dr. Shaarawy prepares will not be reimbursed by Medicare. As such, if Dr. Shaarawy's Medicare enrollment and billing privileges, his patients will suffer because they will need to find and be treated by a new provider in order to obtain clinical treatment and necessary prescription medications.

54.     Dr. Shaarawy will also suffer financial devastation if he is removed from Medicare. Because of his specialties of palliative and hospice medicine and internal medicine, the patient population that he serves is elderly, and thus entirely dependent on Medicare for health insurance coverage. This persists for both Dr. Shaarawy's office-based practice and his skilled nursing facility & hospital practice. As such, if Dr. Shaarawy's Medicare enrollment and billing privileges are revoked, he will be unable to pay the overhead for his practice, and his practice will promptly become

FENTON JURKOWITZ LAW GROUP LLP

1  unsustainable. Furthermore, Dr. Shaarawy will be unable to pay his personal

2  expenses and support his family.

3      55.    Moreover, Dr. Shaarawy is the Medical Director of other hospices and

4  home health agencies not related to Valley Pacific Hospice, Inc. These facilities and

5  their patients will suffer because of Dr. Shaarawy's termination from Medicare.

6  These facilities' patients would suffer a disruption of continuity of care and likely

7  experience negative clinical outcomes.

8                              **Count I**

9                **No Review At All ("*Illinois Council*")**

10      56.    Paragraphs 1 through 55 are incorporated by reference as if fully set

11  forth in Count I.

12      57.    In *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19

13  (2000) ("*Illinois Council*"), the U.S. Supreme Court held that, in situations where the

14  ordinary administrative appeal process would amount to "no review at all" of the

15  claim, the administrative appeal process may be bypassed and 28 U.S.C. § 1331

16  invoked. Such jurisdiction exists where going through the ordinary administrative

17  appeal process would "amount to the practical equivalent of a total denial of judicial

18  review." *Id*. at 20. This has sometimes been referred to as the "*Illinois Council*

19  Exception."

20      58.    In the present case, Plaintiffs have no means to challenge the revocation

21  of Plaintiffs' Medicare enrollment and billing privileges, as well as addition to the

22  CMS Preclusion List. Such revocation and preclusion are immediately permitted,

23  effective November 1, 2024. As a result, Plaintiff has no means available to challenge

24  CMS' revocation before it goes into effect.

25      59.    While it is true that Plaintiffs can ultimately challenge the revocation and

26  preclusion decisions through the administrative process, they have no opportunity to

27  do so before the decisions become effective.

28

60.     Accordingly, pursuant to 28 U.S.C. § 1331, this Court has jurisdiction to grant injunctive relief, enjoining Defendants from revocation of Plaintiffs' Medicare enrollment and billing privileges, as well as addition to the CMS Preclusion List until after the administrative appeals process is fully completed.

## Count II

## Procedural Due Process

61.     Paragraphs 1 through 60 are incorporated by reference as if fully set forth in Count II.

62.     As a general matter, Plaintiffs note that, "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) (affirming authority of federal courts to issue injunctions in actions where courts have jurisdiction under 42 U.S.C. § 405(g).)

63.     Plaintiffs may seek review pursuant to 42 U.S.C. section 405(g), where the exhaustion of remedies requirement is subject to waiver under *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976).

64.     For waiver to apply, "[t]he claim at issue must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal of the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987).

65.     The claim in the present case is entirely collateral to the substantive claim of entitlement, in that Plaintiffs are only seeking, via this court action, injunctive relief to preserve the *status quo* pending the completion of the administrative process. This claim is entirely one of procedural due process, which is a collateral challenge that will not require the court to deal with the substantive merits of the case.

**COMPLAINT FOR INJUNCTIVE RELIEF**

FENTON
JURKOWITZ
LAW GROUP
LLP

66. The procedures used by CMS to revoke enrollment and billing privileges and add providers to the CMS Preclusion List are constitutionally inadequate, because they force Plaintiff to incur a devastating loss that will prevent it from accessing the appeals process or obtaining a fair hearing as mandated by Congress.

67. To satisfy the requirements of due process required under the Fifth Amendment of the United States Constitution, the Secretary must afford a provider an administrative hearing to challenge the revocation and Preclusion List determinations before a fair and impartial decisionmaker before imposing actions that would force Plaintiffs out of business.

68. Defendants are thus threatening to deprive Plaintiffs of their property and liberty interests in or associated with Medicare enrollment and billing without due process of law, in violation of the Fifth amendment of the United States Constitution and other applicable law. Such action threatens to cause irreparable harm to Plaintiffs and the elderly and vulnerable patients they serve. The issuance of injunctive relief prohibiting revocation and addition to the CMS Preclusion list until such due process has been had will not harm the Defendants and is in the public interest.

## Count III

### Preservation of Rights under Section 705 of the APA

69. Paragraphs 1 through 68 are incorporated by reference as if fully set forth in Count III.

70. In relevant part, the Administrative Procedure Act provides that "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or another writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." *See* 5 U.S.C. § 705.

71.     This Court is a "reviewing Court to which [this] case may be taken on appeal" pursuant to 42 U.S.C. §§ 1302, 1320a-7j, and 1395hh; and 42 C.F.R. § 498.98 *et seq.*

72.     Plaintiffs have meritorious challenges to the revocation and addition to the CMS Preclusion List and will vigorously assert their arguments and defenses during the administrative appeals process that is being initiated, and which will be accomplished as promptly and expeditiously as the Secretary can accommodate.

73.     In the meantime, if immediate injunctive relief is not granted to "postpone the effective date of agency action" (i.e., revocation of Plaintiffs' Medicare enrollment and billing privileges and addition of Plaintiffs on the CMS Preclusion List), and to "preserve [Plaintiffs'] stratus or rights pending conclusion of the review proceedings" Plaintiffs' ultimate right to judicial review in this Court will be eliminated because Plaintiffs will be forced into bankruptcy long before such review occurs.

74.     Accordingly, pursuant to 5 U.S.C. § 705, issuance of the injunctive relief sought in this case is necessary and appropriate in order to prevent irreparable injury and to preserve the Court's jurisdiction to review the result of the administrative appeals process related to the underlying revocation issue.

75.     If injunctive relief is granted, there will be no harm to Defendants whatsoever.

76.     The injunctive relief requested by Plaintiffs will not adversely affect the public interest. The public interest is in no way served by an unwarranted and accelerated shutdown of medical practices providing services to elderly and vulnerable patients based on a misunderstanding of Plaintiffs' relationship with Valley Pacific Hospital, Inc. that – if the administrative and judicial review process is permitted to run their course – will most likely be resolved in favor of the Plaintiffs.

77.     Based upon the irreparable harm demonstrated *supra*, a temporary restraining order should be issued enjoining Defendants from revoking Plaintiffs'

Medicare enrollment and billing privileges and adding Plaintiffs to the CMS Preclusion List, until such time that a hearing may be held on Plaintiffs' request for preliminary injunction pursuant to Rule 65, FRCP.

78.    Based upon the irreparable harm demonstrated *supra*, a preliminary injunction and permanent injunction should issue enjoining Defendants from revoking Plaintiffs' Medicare enrollment and billing privileges and adding Plaintiffs to the CMS Preclusion List prior to providing Plaintiffs with a hearing before an impartial and unbiased ALJ.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1.    That this Court issue a Temporary Restraining Order pursuant to Rule 65(c) prohibiting Defendants from revoking Plaintiffs' Medicare enrollment and billing privileges and adding Plaintiffs to the CMS Preclusion List, prior to the completion of the administrative process, upon such bond, if any, as the Court determines is reasonable;

2.    That the Court order Defendants to appear within ten (10) days to show cause why said Temporary Restraining Order should not remain in effect as a preliminary injunction pending the exhaustion of the administrative remedies; and

3.    That this Court issue a preliminary and permanent injunction prohibiting the Defendant from revoking Plaintiffs' Medicare enrollment and billing privileges and adding Plaintiffs to the CMS Preclusion List prior to the completion of the administrative processes, upon such bond, if any, as the Court determines is reasonable.

//
//
//
//
//
//

**COMPLAINT FOR INJUNCTIVE RELIEF**

FENTON
JURKOWITZ
LAW GROUP
LLP

DATED: October 22, 2024          Respectfully submitted,

FENTON JURKOWITZ LAW GROUP, LLP


By */s/Nicholas Jurkowitz*
   NICHOLAS JURKOWITZ
   DAVID D. WAGMEISTER
   Attorneys for Plaintiffs: Rami Shaarawy, M.D.;
   and Rami Moustafa Shaarawy M.D. Medical
   Corporation